# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

EMERGENCY PROFESSIONAL SERVICES, INC., CHILDREN'S EMERGENCY SERVICES, INC., MERCY EMERGENCY CARE SERVICES, INC., OHIO EMERGENCY PROFESSIONALS, INC., and PREMIER EMERGENCY CARE SERVICES, INC.,

*Plaintiffs,*

*v.*

AETNA HEALTH INC., AETNA HEALTH INSURANCE COMPANY, and AETNA LIFE INSURANCE COMPANY,

*Defendants.*

Case No. 1:19-cv-1224

**COMPLAINT**

**JURY DEMAND ENDORSED HEREON**

Plaintiffs Emergency Professional Services, Inc.; Children's Emergency Services, Inc.; Mercy Emergency Care Services, Inc.; Ohio Emergency Professionals, Inc.; and Premier Emergency Care Services, Inc. (collectively, the "Physicians"), by and through counsel, for their complaint against defendants Aetna Health Inc., Aetna Health Insurance Company, and Aetna Life Insurance Company (collectively, "Aetna"), allege as follows:

## NATURE OF THE ACTION

1. The Physicians bring this lawsuit to assert their common law rights to reasonable payments from Aetna in their business dealings.  For years, Aetna has failed to correctly pay the Physicians for certain medically necessary emergency health care services they provided in hospitals throughout Ohio.  Aetna refuses to pay for the reasonable value of the services rendered to these patients covered under health plans underwritten, operated, and/or administered by Aetna

1

in hospital emergency rooms across this state where the Physicians' practice (health plan beneficiaries for whom the Physicians performed services without full reimbursement will be referred to as "Aetna's Members").

2.     For all of the claims at issue in this lawsuit, Physicians were non-participating providers, meaning they did not have an express contract with Aetna to accept discounted rates for their services, nor did they ever agree to be bound by Aetna's reimbursement policies or rate schedules. Specifically, the reimbursement claims within the scope of this action are only those non-participating commercial claims (including for patients covered by Affordable Care Act Exchange products) that were adjudicated as covered and allowed as payable by Aetna, on or after six years prior to the date of the filing of this action, at rates below the billed charges and the reasonable value of the services rendered, as measured by the community where they were performed and by the person who provided them.  Such claims which are asserted in this action are collectively referred to as the "Non-Participating Claims".

3.     Emergency room doctors are obligated by applicable federal law to evaluate, examine, and treat all patients who come into an emergency room, regardless of the existence, or extent, of insurance coverage, and regardless of a patient's ability to pay for the care.

4.     Insurance companies like Aetna, which agree to provide coverage for emergency medical services, are contractually and legally responsible for ensuring that their members receive such services.  Indeed, on information and belief, Aetna markets its insurance products as providing coverage for emergency care, 24 hours a day, 7 days a week, anywhere in the world, and without the need to obtain prior approval for the services.

5.     Emergency room doctors who provide emergency medical services to Aetna's Members therefore satisfy the insurers' obligations to provide for emergency medical services.  In

2

instances such as these, where the emergency room doctors are non-participating, those physicians do not have an express contract with Aetna to accept discounted rates for their services.

6.     Given the nature of these relationships, an equitable obligation arises to require that insurance companies pay emergency room doctors the reasonable value of the services rendered, as measured by the community where the services were performed and by the person who provided them.  This requirement ensures that the insurer is not enriched unjustly at the expense of the emergency room physicians who provided emergency care to the insurer's members and for which the insurer is obligated to reimburse the emergency physicians in full.

7.     At all material times, Aetna has satisfactorily determined that the Physicians' reimbursement claims were covered and medically necessary under the respective health plans. Indeed, Aetna paid each and every Non-Participating Claim, albeit at a rate far less than the reasonable value of the emergency medical care furnished.

8.     Aetna's underpayment of the Physicians' reimbursement claims is part of a deliberate and systematic scheme that it has deployed for years to inflate its profits.  The improper scheme is ongoing.  As a result, the total amount of underpayments grows each day.

9.     This action seeks redress for Aetna's underpayment scheme.  The Physicians are seeking damages in the amount of the difference between what Aetna paid for more than 34,000 Non-Participating Claims at issue herein (and the number of such claims continues to accrue) and the reasonable value of the services rendered, as measured by the community where they were performed and by the person who provided them. By filing this lawsuit, the Physicians seek recovery of the total amount underpaid by Aetna, plus interest for loss of use of that money.

10.     In addition to their damages, the Physicians also request an order from the Court declaring that, on a going forward prospective basis, Aetna must pay the Physicians the reasonable

value of the emergency medical care furnished to Aetna's Members, as measured by the community where the services were performed and by the person who provided them.

11.     To be clear, this lawsuit solely concerns the *rate* of payment to which the Physicians are entitled under Ohio law, not whether a *right* to receive payment exists. Aetna's underpayments concede that the Physicians' services were covered and medically necessary under Aetna's Insureds' respective health plans.  Thus, the claims asserted herein do not concern any claims arising from the denial of benefits under any Aetna health plan, or the denial of coverage under any health plan for emergency medical care performed for Aetna's Members.

12.     Neither Medicare Advantage nor managed Medicaid products are at issue in this litigation.  The Non-Participating Claims only involve commercial and Exchange products operated, insured, or administered by Aetna.

13.     This lawsuit does not challenge any coverage determination under any health plan that may be subject to the federal Employee Retirement Income Security Act of 1974.

14.     Nor does this lawsuit involve any claim by the Physicians for benefits under a health plan based on an assignment of benefits from any Aetna Member.

15.     Aetna's refusal to pay non-participating providers adequate amounts for medical services provided between June 2003 and August 2011 is the subject of litigation pending in the United States District Court for the District of New Jersey under the caption *In re: Aetna UCR Litigation*, Master File No. 2:07-cv-3541(KSH) (CLW), (the "MDL 2020").  The Physicians' Non-Participating Claims do not include any claim for reimbursement payments that are the subject of the claims period at issue in the MDL 2020.

## PARTIES

16.     Emergency Professional Services, Inc. is a professional emergency medicine group practice that staffs emergency departments at various hospitals in Ohio.  It is an Ohio corporation with its principal place of business is in Middleburg Heights, Ohio.

17.     Children's Emergency Services, Inc. is a professional emergency medicine group practice that staffs the emergency departments at Dayton Children's Hospital in Dayton, Ohio.  It is an Ohio corporation with its principal place of business is in Dayton, Ohio.

18.     Mercy Emergency Care Services, Inc. is a professional emergency medicine group practice that staffs emergency departments at various hospitals in Ohio.  It is an Ohio corporation with its principal place of business is in Columbus, Ohio.

19.     Ohio Emergency Professionals, Inc. is a professional emergency medicine group practice that staffs emergency departments at various hospitals in Ohio.  It is an Ohio corporation with its principal place of business is in Hamilton, Ohio.

20.     Premier Emergency Care Services, Inc. is a professional emergency medicine group practice that staffs emergency departments in at Atrium Medical Center in Middletown, Ohio and Upper Valley Medical Center in Troy, Ohio.  It is an Ohio corporation with its principal place of business is in Columbus, Ohio.

21.     Defendant Aetna Health Inc. (Pennsylvania) is a Pennsylvania corporation with a principal place of business in Blue Bell, Pennsylvania or in Connecticut.  Aetna Health, Inc. (Pennsylvania) is responsible for paying for emergency medical services provided to one or more of Aetna's Members. On information and belief, Aetna Health, Inc. (Pennsylvania) is a licensed Ohio health maintenance organization.

22.     Defendant Aetna Health Insurance Company is organized under the laws of the State of Pennsylvania and has its principal place of business in Pennsylvania or Hartford, Connecticut.  Aetna Health Insurance Company is responsible for paying for emergency medical services provided to one or more of Aetna's Members.

23.     Defendant Aetna Life Insurance Company is organized under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut.  Aetna Life Insurance Company is responsible for paying for emergency medical services provided to one or more of Aetna's Members.

### JURISDICTION AND VENUE

24.     This Court has personal jurisdiction over Defendants because Defendants knowingly and purposefully provide health insurance coverage to patients in Ohio.   Defendants are engaged in substantial activity within and throughout Ohio and maintain offices in Ohio.

25.     This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 2201 because complete diversity of citizenship exists among the parties and the total amount in controversy exceeds $75,000.00, exclusive of interest and costs.

26.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### *Aetna*

27.     Aetna is a national managed care organization that insures, operates and administers health plans in Ohio.

28.     In exchange for premiums and/or fees or other compensation, Aetna assumes responsibility for the payment of health care services, including emergency medical care, rendered to patients covered by its health plans.

29.     Aetna's responsibilities include providing coverage for emergency care, 24 hours a day, 7 days a week, anywhere in the world, without the need for Aetna's Members to obtain prior approval for the services, and without the need to obtain those services from participating providers.

30.     Aetna, in other words, bears responsibility for the payment of emergency medical care provided to Aetna's Members regardless of its contractual relationship with the doctor, *i.e.,* regardless of whether the treating physician is a participating provider or a non-participating provider. Aetna understands and expressly acknowledges that its members will seek emergency treatment from non-participating providers, and is obligated to pay for those services.  Aetna has acknowledged this obligation with respect to the Non-Participating Claims at issue in this litigation, as it processed and paid those claims, albeit at a rate lower than required by state law.

### *The Physicians*

31.     The Physicians are professional emergency medical group practices that staff emergency departments and treat emergency room patients at more than 30 Ohio hospitals.  They staff the facilities with doctors 24 hours a day, 7 days a week.   The emergency services at issue in this litigation that the Physicians provided to Aetna's members included treating conditions

ranging from cardiac arrest, to broken limbs, to burns, to diabetic ketoacidosis and shock, to gastric and/or obstetrical distress, among countless others. The value that the Physicians provide to their communities in resolving medical exigencies such as these is enormous.

32.     At all material times the Physicians have not been participating providers with Aetna.

33.     Each Non-Participating Claim is for reimbursement for services that the Physicians provided to Aetna's Members in good faith and at times when they were not participating providers with Aetna.

34.     At all material times the Physicians have not been a party to any express contract with Aetna that governs the reimbursement, or any other aspect, of the services provided to Aetna's Members. The Physicians therefore were "out-of-network" providers with Aetna when they rendered the services that underpin the Non-Participating Claims at issue in this lawsuit.

35.     Despite their out-of-network status, the Physicians provided emergency medical care to Aetna's Members in good faith.

36.     At all material times the Physicians timely and directly billed Aetna for the emergency medical care provided to Aetna's Members, with the reasonable expectation of being paid an appropriate amount for those services.

37.     At all material times Aetna satisfactorily determined that the Non-Participating Claims were covered and medically necessary under the respective health plans.

38.     At all material times the Physicians have not agreed to accept any form of discounted rate from Aetna or to be bound by Aetna's payment policies or rate schedules with respect to the Non-Participating Claims.

39.     Despite the absence of any such agreement, Aetna has unilaterally applied an improper discount to its payments to the Physicians for the Non-Participating Claims.

40.     Aetna's payment strategy for out-of-network providers is solely motivated by its desire to maximize profits.

41.     At all material times for the Non-Participating Claims at issue, Aetna has paid for the emergency medical care that the Physicians provided to Aetna's Members, but at rates less than the reasonable value of the services, as measured by the community where they were performed and by the person who provided them.

42.     Aetna's underpayments to the Physicians continue to accrue.

*Federal Law Mandates That The Physicians*
*Provide Emergency Medical Care to Aetna's Members*

43.     Federal law obligates emergency medical providers—like the Physicians—to provide stabilizing treatment to patients who present themselves at emergency departments.

44.     Under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. §§ 1395dd(a)-(b), (d), (h), hospitals and the physicians who staff their emergency departments have a duty to "provide for an appropriate medical screening examination" when an individual comes to the emergency department and, if "the individual has an emergency medical condition," to "stabilize the medical condition" without inquiry into "the individual's method of payment or insurance status."  42 U.S.C. §§ 1395(a)-(b), (h).

45.     Hospitals are subject to civil liability for a violation of EMTALA's mandates.  *See id.* § 1395dd(d)(2)(A).  In addition, "any physician who is responsible for the examination, treatment, or transfer of an individual in a participating hospital" who negligently violates EMTALA is subject to civil monetary penalties of up to $50,000 per violation. *Id.* § 1395dd(d)(1)(B).

9

46.     Thus, federal law requires that the Physicians provide stabilizing treatment to any individual—including Aetna's Members—who presents at an emergency department, regardless of the person's insurance coverage or ability to pay for the medical care.

47.     Not only are emergency room doctors duty-bound to follow the foregoing federal requirements, but they often are obligated to provide emergency medical care under their contractual arrangements with the hospitals.[1]

### *The Law and Equity Must Intervene Here To Prevent An Injustice*

48.     Under Ohio law, unjust enrichment occurs where a person has and retains money or benefits which in justice and equity belong to another.

49.     Where an out-of-network health care provider is required by law to treat patients in an emergency room, an insurer is unjustly enriched if it fails to pay the out-of-network healthcare provider in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees.

50.     Here, to comply with their ethical and legal obligations under federal law, the Physicians provided, and continue to provide, medically necessary emergency medical care to Aetna's Members in good faith.

51.     Aetna could not lawfully prevent its Members from seeking emergency medical care from the Physicians.

52.     Aetna is required by Ohio law to provide coverage for emergency services to all Aetna Members.  *See* Ohio Rev. Code §§ 3923.65(B), 1753.28(B).  Aetna must provide such coverage irrespective of whether an emergency provider is a participating provider in Aetna's network.  *See* 42 U.S.C. § 300gg-19a(b)(1).

---

[1] Hospitals subject to EMTALA are permitted to contract for emergency services, provided they comply with certain regulatory requirements.  *See* 42 C.F.R. § 482.12.

53.     Thus, the Physicians were required by law to provide emergency care to Aetna's Members and Aetna was required by law to provide insurance coverage for such emergency services.  As such, the parties were, in effect, compelled to do business with each other.

54.     Aetna is obligated to reimburse the Physicians for the reasonable value of the services the Physicians provided, taking into account the Members' liability for such services.

55.     For all of the Non-Participating Claims, Aetna has failed to reimburse the Physicians for the reasonable value of the services, and Aetna therefore has been enriched by the amount of the difference between (i) the reasonable value of the Physicians' services and (ii) the amount allowed by Aetna (*i.e.*, the amount paid by Aetna plus the Members' liability).

56.     For all of the Non-Participating Claims, Aetna's failure to reimburse the Physicians the reasonable value of their services (and Aetna's concomitant enrichment thereby) comes at the Physicians' expense because the Physicians are entitled to reimbursement at the reasonable value of the services they have rendered to Aetna's Members.

57.     It would be against equity and good conscience to permit Aetna to retain the amount at issue on the Non-Participating Claims because the Physicians are entitled to such amounts at issue in the Non-Participating Claims, which represent the difference between the reasonable value of the services the Physicians have rendered and the amounts allowed by Aetna for such services. Justice and equity require that Aetna reimburse the Physicians in full for the emergency services they rendered to Aetna's Insureds, as reflected in the Non-Participating Claims.

58.     Furthermore, the emergency medical care provided by the Physicians to Aetna's Members materially benefits Aetna.  Without limitation, the Physicians' provision of emergency medical services to Aetna's Insureds benefited Aetna by discharging Aetna's contractual

obligations to Aetna's Insureds to ensure that such emergency services are provided to Aetna's Members.

59.     The benefit that Aetna receives from the Physicians' emergency medical care therefore is significant.  In exchange for premiums and other compensation, Aetna assumes a duty to provide coverage to its insureds for emergency medical care.  Satisfying this core obligation is a material benefit to Aetna.

60.     Thus, where providers (like Physicians) are required by law to treat patients in an emergency room, an insurance company (like Aetna) is unjustly enriched if it fails to reimburse the provider in full for rendering the necessary treatment to the insurer's members.

61.     At all material times the Physicians billed Aetna for their Non-Participating Claims arising from the treatment of Aetna's Members.  The Physicians did so based on this understanding and Aetna's implied agreement to reimburse them at the reasonable value for the emergency medical care rendered.

62.     Aetna knew that the Physicians expected payment for the emergency medical care they provided.  This is the reason Aetna consistently adjudicated the Non-Participating Claims as covered and medically necessary.  And this is why Aetna paid the Physicians for the Non-Participating Claims.  The payments made, however, were at all times below the reasonable value of the services rendered as measured by the community where they were performed and by the person who provided them.

63.     By assuming responsibility for paying for the emergency medical care provided to Aetna Members, justice requires Aetna to pay the reasonable value of those services.

64. Aetna enjoyed, and accepted, the benefit of the Physicians' valuable services. At all material times Aetna tendered payment to the Physicians—albeit at arbitrary, deficiently low rates—in response to the submission of the Non-Participating Claims that are subject of this action.

65. Aetna has engaged in a scheme to unilaterally set its own artificially low reimbursement rates for emergency medical care provided to Aetna Members by non-participating providers, including the Physicians, for the Non-Participating Claims.

66. The lower reimbursement rates paid by Aetna are neither reasonable nor sufficient to compensate the Physicians for the emergency medical care provided to Aetna's Members for the Non-Participating Claims.

67. Aetna's refusal to pay the Physicians the reasonable value of the emergency medical care provided to Aetna's Members for the Non-Participating Claims has caused, and continues to cause, the Physicians to suffer damages in an amount equal to the difference between the amounts allowed and paid by Aetna and the reasonable value of the services the Physicians provide, plus the loss of use of that money.

68. Aetna's underpayment of the Non-Participating Claims violates the duty it owes to the Physicians.

69. The Physicians and Aetna do not voluntarily choose to transact with each other. Neither party has a choice in the matter.

70. The Physicians and Aetna are compelled to operate together as a result of their concomitant legal duties, namely (1) a doctor's duty under federal law to treat emergency room patients regardless of their insurance coverage or ability to pay, and (2) the insurer's responsibility to pay for covered emergency medical care.

71.     An implied-in-law contract therefore must be imposed by law to prevent a grave injustice, specifically an enormous economic windfall in Aetna's favor.

72.     Ohio has long recognized and adhered to the common law doctrine of implied-in-law contracts to remedy situations like the one here presents.

73.     In sum, the Physicians' and Aetna's respective duties here to provide and pay for emergency medical care gives rise to an implied-in-law contract.  Allowing Aetna to benefit from the Physicians' provision of emergency medical care to Aetna's Members without paying reasonable compensation would be unjust, unconscionable and unfair given the circumstances.

74.     Aetna continues to underpay the Physicians for covered services rendered to Aetna's Members. The Physicians therefore seek a declaration establishing the appropriate reimbursement rates to be paid in order to avoid undergoing further harm.

75.     The Physicians specifically seek a determination that (1) Aetna has an obligation to reimburse the Physicians at rates equal to the reasonable value of the emergency medical care rendered, and (2) the rates Aetna has paid on the Non-Participating Claims are inadequate and violate its obligation to pay the Physicians the reasonable value of their services.

**FIRST CAUSE OF ACTION**
**Breach of Implied-in-Fact Contract**

76.     The Physicians re-allege and restate paragraphs 1 through 75 above as if they were fully set forth herein.

77.     At all material times, the Physicians were obligated under federal law to provide emergency medical care to all patients presenting at the emergency departments they staff, including Aetna's Members.

78.     At all material times, Aetna knew that the Physicians were non-participating providers that furnished emergency medical care to Aetna's Members.

14

79.     At all material times, Aetna knew that it was obligated by federal and Ohio law to provide coverage for emergency services to its Members rendered by an out-of-network healthcare provider and to therefore reimburse the Physicians the reasonable value of their services.

80.     At all material times, and continuing, the Physicians have undertaken to provide valuable emergency medical care to Aetna Members in good faith, and Aetna has undertaken to pay for such services provided to Aetna's Members.

81.     At all material times, Aetna was aware that the Physicians were entitled to and expected to be paid the reasonable value of their services.

82.     At all material times, the Physicians were not parties to any agreement with Aetna and did not agree to accept discounted rates from Aetna or to be bound by Aetna's reimbursement policies or rate schedules with respect to any of the Non-Participating Claims for emergency medical care rendered to Aetna's Members.

83.     Through the parties' conduct and respective undertaking of obligations concerning emergency medical services provided by the Physicians to Aetna's Members, the parties implicitly agreed, and the Physicians had a reasonable expectation and understanding, that Aetna would reimburse the Physicians for Non-Participating Claims at a rate reflecting the reasonable value of Plaintiffs' services.

84.     At all material times, the Physicians have directly billed Aetna for the Non-Participating Claims arising from the emergency medical care the Physicians rendered to Aetna's Members, based on Aetna's implied agreement to reimburse the Physicians for those services at rates equal to the reasonable value of the Physicians' services.

85.     For all Non-Participating Claims submitted to Aetna, the Physicians expected to be paid the reasonable value of the services rendered.

86.     At all material times, Aetna has received and accepted the Physicians' bills for the emergency medicine care they provided and continue to provide to Aetna's Members, and Aetna has consistently adjudicated and paid, and continues to adjudicate and pay, the Physicians directly for the Non-Participating Claims, albeit at amounts less than the reasonable value of the services rendered.

87.     In breach of its implied contract with the Physicians, Aetna has and continues to systemically adjudicate the Non-Participating Claims at rates substantially below the reasonable value of the professional emergency medical services provided to Aetna's Members by the Physicians.

88.     The Physicians have performed all obligations under their implied contract with Aetna necessary for the Physicians to be reimbursed for the Non-Participating Claims at the reasonable value of the services rendered.

89.     At all material times, all conditions precedent have occurred that were necessary for Aetna to perform its obligation to pay the Physicians on the Non-Participating Claims at the reasonable value of the Physicians' emergency medical care.

90.     The Physicians did not agree that the lower reimbursement rates paid by Aetna were reasonable or sufficient to compensate the Physicians for the emergency medical services provided to Aetna's Members.

91.     As a result of Aetna's breach of its implied contract to pay the Physicians for the Non-Participating Claims at the reasonable value of their services, the Physicians have suffered injury and are entitled to monetary damages from Aetna to compensate them for their injury.

92.     The Physicians have suffered damages in an amount equal to (i) the difference between the amounts Aetna unilaterally allowed as payable for the Non-Participating Claims and

the lesser of the Physicians' charges and the reasonable value of their professional emergency medicine services, plus (ii) the Physicians' loss of use of that money.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

93.     The Physicians re-allege and restate paragraphs 1 through 75 above as if they were fully set forth herein.

94.     For all of the Non-Participating Claims, Aetna has failed to reimburse the Physicians for the reasonable value of the services.  Aetna therefore has been enriched by the amount of the difference between (i) the reasonable value of the Physicians' services and (ii) the amount allowed by Aetna (*i.e.,* the amount paid by Aetna plus the Members' liability).

95.     For all of the Non-Participating Claims, Aetna's failure to reimburse the Physicians the reasonable value of their services (and Aetna's concomitant enrichment thereby) comes at the Physicians' expense because the Physicians are entitled to reimbursement at the reasonable value of the services they have rendered to Aetna's Members.

96.     It would be against equity and good conscience to permit Aetna to retain the amount at issue on the Non-Participating Claims.  The Physicians are entitled to such amounts at issue in the Non-Participating Claims, which represent the difference between the reasonable value of the services the Physicians have rendered and the amounts allowed by Aetna for such services.  The monies at issue in the Non-Participating Claims that Aetna has retained in justice and in equity belong to the Physicians.

97.     Furthermore, the Physicians conferred a benefit on Aetna by providing valuable emergency medical care to Aetna's Members for which Aetna was responsible for payment.

98.    In exchange for premiums and other forms of compensation, Aetna owes Aetna's Members an obligation to pay the Physicians for the covered medical services Aetna's Members receive from the Physicians, and to make sure they receive such services.

99.    Aetna derives a material benefit from the Physicians' provision of emergency medical care to Aetna's Members, because it is through the Physicians' provision of those services that Aetna fulfills its core obligations to Aetna's Members to ensure that the Aetna's Members receive covered emergency services.

100.    There is no dispute that the emergency medical care from which the Non-Participating Claims arise constituted covered services, because Aetna adjudicated the claims as payable, albeit at an amount less than the reasonable value of the services.

101.    Aetna voluntarily accepted, retained and enjoyed, and continues to accept, retain and enjoy, the benefits conferred on it by the Physicians, knowing that the Physicians expected to be paid the reasonable value of their services.

102.    Aetna has been unjustly enriched by its failure and refusal to pay the Physicians the reasonable value of the emergency medical care they provided to Aetna's Members, as reflected in the Non-Participating Claims at issue, and as measured by the community where they were rendered and by the person who rendered them.

103.    Aetna has unjustly enriched itself by withholding from the Physicians monies it should have paid, namely the difference between the reasonable value of the emergency medical care rendered for the Non-Participating Claims and the amounts allowed as payable by Aetna, plus the Physicians' loss of use of that money.

104.    Under these circumstances, it is unjust and inequitable for Aetna to retain the benefit they received without paying the value of that benefit; *i.e.*, by paying the Physicians

reasonable value of the emergency medical care the Physicians provided for the Non-Participating Claims.

105.    It would be against equity and good conscience to allow Aetna to reap a benefit by underpaying the Physicians for valuable emergency medical care provided to Aetna's Members, the they were compelled to render.

106.    Given these inequities, an equitable obligation arises and runs from Aetna to the Physicians.

107.    The Physicians seek compensatory damages, as permitted by applicable law, in an amount which will continue to accrue through the date of trial as a result of Aetna's continuing unjust enrichment, equal to (i) the difference between the amount Aetna adjudicated as payable for those services and the reasonable value of the Physicians emergency medicine care, plus (ii) the loss of use of that money.

**THIRD CAUSE OF ACTION**
**Quantum Meruit**

108.    The Physicians re-allege and restate paragraphs 1 through 75 above as if they were fully set forth herein.

109.    For all of the Non-Participating Claims, Aetna has failed to reimburse the Physicians at the full measure of the value of those services.

110.    For all of the Non-Participating Claims, Aetna's failure to reimburse the Physicians at the full measure of the value of their services (and Aetna's concomitant enrichment thereby) comes at the Physicians' expense because the Physicians are entitled to reimbursement at the full measure of the value of the services they have rendered to Aetna's Members.

111.    It would be against equity and good conscience to permit Aetna to retain the amount at issue on the Non-Participating Claims.  The Physicians are entitled to such amounts at issue in

the Non-Participating Claims, which represent the difference between the full measure of the value of the services the Physicians have rendered and the amounts allowed by Aetna for such services. The monies at issue in the Non-Participating Claims that Aetna has retained in justice and in equity belong to the Physicians.

112.   Furthermore, the Physicians conferred a benefit on Aetna by providing valuable emergency medical care to Aetna's Members for which Aetna was responsible for payment.

113.   In exchange for premiums and other forms of compensation, Aetna owes Aetna's Members an obligation to pay the Physicians for the covered medical services Aetna's Members receive from the Physicians, and to make sure they receive such services.

114.   Aetna derives a material benefit from the Physicians' provision of emergency medical care to Aetna's Members, because it is through the Physicians' provision of those services that Aetna fulfills its core obligations to Aetna's Members to ensure that the Aetna's Members receive covered emergency services.

115.   There is no dispute that the emergency medical care from which the Non-Participating Claims arise constituted covered services, because Aetna adjudicated the claims as payable, albeit at an amount less than the full measure of the value of the services.

116.   Aetna voluntarily accepted, retained and enjoyed, and continues to accept, retain and enjoy, the benefits conferred on it by the Physicians, knowing that the Physicians expected to be paid the full measure of the value of their services.

117.   Aetna has been unjustly enriched by its failure and refusal to pay the Physicians the full measure of the value of the emergency medical care they provided to Aetna's Members, as reflected in the Non-Participating Claims at issue, and as measured by the community where they were rendered and by the person who rendered them.

118.    Aetna has unjustly enriched itself by withholding from the Physicians monies it should have paid, namely the difference between the full measure of the value of the emergency medical care rendered for the Non-Participating Claims and the amounts allowed as payable by Aetna, plus the Physicians' loss of use of that money.

119.    Under these circumstances, it is unjust and inequitable for Aetna to retain the benefit they received without paying the full measure of the value of that benefit; *i.e.*, by paying the Physicians *quantum meruit*, or the full measure of the value of the emergency medical care the Physicians provided for the Non-Participating Claims.

120.    It would be against equity and good conscience to allow Aetna to reap a benefit by underpaying the Physicians for valuable emergency medical care provided to Aetna's Members, the they were compelled to render.

121.    Given these inequities, an equitable obligation arises and runs from Aetna to the Physicians.

122.    The Physicians seek compensatory damages, as permitted by applicable law, in an amount which will continue to accrue through the date of trial equal to (i) the difference between the amount Aetna adjudicated as payable for those services and the full measure of the value of the Physicians emergency medicine care, plus (ii) the loss of use of that money.

## FOURTH CAUSE OF ACTION
### Declaratory Relief

123.    Plaintiffs re-allege and restate paragraphs 1 through 75 above as if they were fully set forth herein.

124.    This is an action for declaratory and actual damages pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

125.    A bona fide and justiciable controversy exists that involves the Plaintiffs' substantial legal interests.

126.    All adverse parties are presently before the Court.

127.    A judicial declaration is necessary and appropriate to clarify the parties' respective rights and obligations concerning payment for the Physicians' services, and no adequate remedy at law is available.

128.    To prevent the need for successive, separate actions enforcing the Physicians' rights, the Physicians seek a declaration from this Court stating that Aetna must pay the Physicians prospectively for the Non-Participating Claims at the reasonable value of their services.

**WHEREFORE**, the Physicians pray that this Court:

(1) Enter judgments against Aetna and for each Physician pursuant to the First, Second and Third Causes of Action in an amount representing the difference between the amounts deemed payable by Aetna and the reasonable value of the Physicians' professional emergency medical care, as determined after trial, plus interest;

(2) Decree pursuant to the Fourth Cause of Action that Aetna must pay the Physicians prospectively for the emergency medicine care the Physicians render to Aetna Members in an amount that represents the reasonable value of the Physicians' emergency medical care, as determined after trial; and

(3) Award such further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: May 29, 2019

Respectfully Submitted:

/s/ Loriann E. Fuhrer
Loriann E. Fuhrer (0068037)
*Trial Attorney*
Kegler Brown Hill + Ritter Co., LPA
65 E. State Street, Suite 1800
Columbus, OH  43215
(614) 462-5474 (direct)
(614) 464-2634 (fax)
lfuhrer@keglerbrown.com

*Attorneys for Plaintiffs*

Of Counsel (pro hac vice motions to be submitted):

Alan D. Lash
alash@lashgoldberg.com
Justin C. Fineberg
jfineberg@lashgoldberg.com
Nicholas A. Ortiz
nortiz@lashgoldberg.com
Lash & Goldberg LLP
Michael Lee Ehren
mehren@lashgoldberg.com
Miami Tower
100 S.E. 2nd Street
Suite 1200
Miami, FL 33131
Telephone: 305.347.4040
Facsimile: 305.347.4050